*762 OPINION.
Leech:
Under its first assignment petitioner contends that it is exempt from income tax under sections 231 (12) of the 1926 Revenue Act and 103' (12) of the 1928 Revenue Act, which provide:
The following organizations shall be exempt from taxation under this title: ***** # *
(12) Farmers’, fruit growers’, or like associations organized and operated on a cooperative basis (a) for the purpose of marketing the products of members or other producers, and turning back to them the proceeds of sales, less the necessary marketing expenses, on the basis of either the quantity or the value of the products furnished by them, or (b) for the purpose of purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses. * * *
Despite the very extensive argument of petitioner’s counsel on brief to convince us that waste paper, junk, garbage in place, and labor constitute “ products ” of the stockholders or members of petitioner, which .are merely “ marketed ” by the latter, we cannot agree with his contention that petitioner is similar in all essential respects to a cooperative agricultural marketing association which sells for its members the fruits or vegetables produced by them and delivered to it for sale, remitting to them the proceeds less the cost of selling. We cannot see in the wording of the quoted sections any indication whatsoever on the part of Congress to grant tax immunity to a corporation organized and operating in the manner of this petitioner. In Northwestern Drug Co., 14 B. T. A. 222, in construing section 231 (11) of the 1921 Act, which is in all essential respects similar to the sections here involved, we said:
The plain intention of Congress was to grant certain benefits to groups of producers organized to sell their own crops or other products through cooperative sales agencies, or to purchase supplies and equipment for the use of members in their activities as producers.
Petitioner is not marketing products of its members. Its income represents the payments made to it by the public for service it renders and the proceeds of sales of its own property, consisting of junk and waste paper which it collects in its operations. The service rendered is by the corporation with equipment which it owns and labor which it employs.
This brings us to petitioner’s alternative assignment of error that if exemption be denied then the sections of the act above quoted are unconstitutional, as class legislation. We are warned by counsel that *763 a failure to correctly decide this question “ would be nothing short of catastrophic.” We -do not shrink from assuming necessary responsibilities, but in view of the fact that the question of the constitutionality of the quoted sections is immaterial to one to whom such sections, as we have held, have no application, we prefer to postpone consideration of that question to such time as we have a controversy in which it is pertinent to an issue presented.
The second issue is upon the allowance by respondent of $3,600 as a reasonable salary for each of the members, in computing petitioner’s deduction for expense of operation. Petitioner contends that $3,800 is the proper allowance on the basis of a reasonable daily wage of approximately $16. In view of the testimony that the members were often absent from sickness and at times as many as 25 would not be at work, the allowance by respondent of a flat amount of $3,600 for each is, in our opinion, not inadequate, even upon the daily wage basis contended for by petitioner.
The remaining issue is the allowability as regular and necessary business expenses of expenditures by petitioner of $34,485.35 in 1927 and $1,600 in 1929. The circumstances with respect to each expenditure are substantially the same. In each of those years ordinances were proposed for enactment which might reasonably be expected to injure greatly petitioner’s business. The expenditures in question were for printing and distributing pamphlets, newspaper advertising, and the hire of speakers to argue advisability of the proposed changes in the law. The expenditures were disallowed by respondent as representing cost of “ lobbying ”, but the record shows to our satisfaction that none of the expenditures were for lobbying in the sense of something sinister as opposed to the public welfare. It is true that the purpose of the expenditures was to avert the enactment of legislation unfavorable to petitioner and calculated to damage its business, but the means used, argument addressed to the public, were legitimate. There is no intimation that the expenditures were for illegal purposes such as buying votes or influencing acts of public officials. In Los Angeles & Salt Lake Railroad Co., 18 B. T. A. 168, we held that expenditures made in appealing to the public for the purpose of creating a sentiment favorable to the taxpayer and thus averting the enactment of damaging legislation were reasonable and necessary. We can see in these expenditures by petitioner merely the cost of legitimate efforts made to protect its property and business. Such cost is an ordinary and necessary expense of business. Kornhauser v. United States, 276 U. S. 145; G. T. Wofford, 15 B. T. A. 1225, affd., 49 Fed. (2d) 1027; Alexander Sprunt & Sons, Inc., 24 B. T. A. 599; Matson Navigation Co., 24 B. T. A. 14.

Judgment will he entered under Rule 50.